UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| A&J PRODUCE CORPORATION,<br>    Plaintiff, | :<br>:<br>: |
| v. | :<br>: |
| WATERMELON EXPRESS, LLC et al.,<br>    Defendants. | :<br>: |

| | |
|---|---|
| VEGPRO INTERNATIONAL, INC.,<br>    Intervening Plaintiff, | :<br>: |
| | :    CIVIL ACTION NO. |
| v. | :    3:08-cv-1850 (VLB) |
| WATERMELON EXPRESS, LLC et al.,<br>    Defendants. | :<br>:    December 23, 2010 |

**MEMORANDUM OF DECISION GRANTING PLAINTIFFS'
MOTIONS FOR SUMMARY JUDGMENT [Doc. ##97, 101]**

The plaintiff, A&J Produce Corp. ("A&J"), and the intervening plaintiff, VegPro International, Inc. ("VegPro") (collectively the "Plaintiffs") brought this action to enforce the trust provisions of Section 5(c) of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e, against the defendants, Watermelon Express, L.L.C. ("Watermelon Express"), Kathleen Annicelli, and Charles Annicelli (collectively the "Defendants"). This case arises out of the Defendants' alleged failure to pay for wholesale quantities of produce sold and delivered to them by the Plaintiffs. The Plaintiffs seek damages, plus contractual and statutory interest, reasonable attorneys' fees, and costs.

**Presently pending before the are A&J and VegPro's respective motions for summary judgment. [Doc. ##97, 101]. For the reasons that follow, the motions are GRANTED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A&J filed its complaint on December 5, 2008, invoking this Court's jurisdiction pursuant to Section 5(c)(5) of the PACA, 7 U.S.C. § 499e(c)(5), and 28 U.S.C. § 1331. [Doc. #1]. Subsequently, on December 18, 2008, VegPro filed a motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure, which was granted by the Court absent objection on January 12, 2009. [Doc. #22]. VegPro filed its complaint in intervention on the same date. [Doc. #23]. A&J and VegPro filed their motions for summary judgment on June 15, 2010 and June 18, 2010, respectively. [Doc. ##97, 101]. Pursuant to Local Rule 7(a), the Defendants' responses to these motions were due on July 6, 2010 and July 9, 2010, respectively. On July 8, 2010, the Defendants filed a motion for extension of time until July 22, 2010 to object to the motions. [Doc. #106]. The Court granted the motion the following day. [Doc. #107]. However, the Defendants failed to file an objection by July 22, 2010 or seek an additional extension of time within which to do so. Accordingly, on September 23, 2010, the Court issued a Notice informing the Defendants that their failure to respond may result in the sanction of deeming the assertions in the Plaintiffs' Rule 56(a)(1) Statements as admitted by the Defendants, or in the entry of default judgment in favor of the Plaintiffs pursuant to Rule 55 of the Federal Rules of Civil Procedure. [Doc. #108] (citing LeSane v. Hal's Security Analyst, Inc., 239 F.3d 206, 210-11 (2d Cir. 2001); U.S. v. Cirami, 535 F.2d**

736, 739 (2d Cir. 1976)). The Court allowed the Defendants until October 1, 2010 to respond to the motions for summary judgment. Id. Nevertheless, to date the Defendants have failed to respond to the motions for summary judgment or seek an additional extension of time in which to do so. Accordingly, the Court deems the assertions made in the Plaintiffs' 56(a)(1) Statements as true, which set forth the following facts.

*Facts Pertaining to A&J*

A&J, located in Bronx, New York, is engaged in the business of selling wholesale quantities of produce. A&J is and was licensed as a dealer under the PACA at all times relevant to this action. Between July 23, 2008 and August 8, 2008, A&J sold to the Defendants various wholesale lots of produce, which had been moved in interstate commence, worth a total of $81,880.50. The Defendants accepted the produce received from A&J, but never provided payment for the produce.

Watermelon Express, located in Higganum, Connecticut, was a dealer of wholesale quantities of produce subject to and licensed under the PACA at all times relevant to this action. Kathleen Annicelli is a member and principal of Watermelon Express, and is a signatory on Watermelon Express' bank accounts. Charles Annicelli is a signatory on Watermelon Express' bank accounts, and is described as the owner of Watermelon Express on the signature card for the company's Suntrust Bank account.

Thomas Tramutola, Secretary Treasurer of A&J, has known Charles Annicelli for approximately 30 years. A&J began doing business with Charles Annicelli

during the summer of 2006. Since that time, Tramutola has known Charles Annicelli as a watermelon shipper and the owner of Watermelon Express. Over the course of A&J's relationship with Watermelon Express, Tramutola dealt exclusively with Charles Annicelli and understood Charles Annicelli to be Watermelon Express' owner. Tramutola never dealt with Kathleen Annicelli.

In 2007, Charles Annicelli contacted Tramutola and told him that his brother, Dennis Annicelli, wanted to buy produce, and asked if A&J would sell produce to him. Dennis Annicelli operated a company called Top Notch Produce, LLC ("Top Notch"), which is located in New Haven, Connecticut. A&J agreed to sell produce to Watermelon Express, and deliver the produce to Top Notch and Dennis Annicelli, on the condition that Watermelon Express agree that it would be responsible for paying for the produce. A&J's invoices show that the produce was sold to Watermelon Express. The invoices, which were mailed to Watermelon Express, also included the trust preservation language required by the PACA Amendments of 1995. See 7 U.S.C. § 499e(c)(4).[1] Because A&J used different invoice forms over the course of its sales to the Defendants, certain invoices do not include a provision for interest, whereas other invoices include a provision for interest at a rate of 16% per annum on past due accounts and payment of attorneys fees and

---

[1] The required language is as follows: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

4

costs. No one from Watermelon Express ever contacted A&J to dispute that Watermelon Express is responsible for the amounts due.

A&J's representatives contacted Charles Annicelli many times to discuss the amount due to A&J. Charles Annicelli acknowledged that Watermelon Express was responsible for the amount due, and indicated that he would get A&J paid the amount it was owed. At no time did Charles Annicelli deny that Watermelon Express owed the amount due. However, A&J has not been paid for the produce it delivered.

*Facts Pertaining to VegPro*

VegPro, loacted in Quebec, Canada, sells wholesale quantities of produce in interstate commerce. Between August 29, 2008 and November 16, 2008, VegPro sold and delivered produce to Watermelon Express, which Watermelon Express accepted, having an invoice value in the total amount of $131,585.75. VegPro issued written notice of its intent to preserve PACA trust benefits to Watermelon Express in accordance with the PACA Amendments of 1995 by including on each of its invoices the trust preservation language required under the statute. See 7 U.S.C. § 499e(c)(4). However, Watermelon Express has not paid the invoices in accordance with the payment terms.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine

5

issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing that no genuine issues exist as to any material facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). If the moving party meets its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted). A party also may not rely on conclusory statements or unsupported allegations that the evidence in

support of the motion for summary judgment is not credible. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

The Court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006).

### B. Analysis

#### 1. Liability of Watermelon Express

Congress enacted the PACA in 1930 "to suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce." Regulations under the Perishable Agricultural Commodities Act; Addition of Provisions to Effect a Statutory Trust, 49 Fed. Reg. 45737 (Nov. 20, 1984). The PACA requires produce dealers to make "full payment promptly" for any produce they purchase. 7 U.S.C. § 499b(4).

In 1984, Congress amended the PACA to "increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them." H. Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406; see also Frio Ice, S.A. v. Sunfruit, Inc., 918 F.2d 154, 159 (11th Cir. 1990) ("[T]he central purpose of Section 499e(c) is to ensure payment to trust beneficiaries.").

7

To carry out this intent, Section 499e(c) imposes a statutory trust on all produce-related assets, including the produce itself, other products derived therefrom, and any receivables or proceeds from the sale thereof, held by agricultural merchants, dealers, and brokers which must be maintained for the benefit of all unpaid suppliers and sellers of the produce until full payment has been made. 7 U.S.C. § 499e(c)(2). The trust arises upon the commencement of the produce purchaser's business and is continually in existence throughout the life of the purchaser's business. See In re Kornblum & Co., Inc., 81 F.3d 280, 285-86 (2d Cir. 1996).

The trust is a non-segregated "floating" trust that applies to all of the buyer's produce in inventory and all proceeds from the sale of produce. 7 U.S.C. § 499e(c)(2). While commingling of trust assets is contemplated, the burden of tracing the origin of any disputed assets is on the PACA debtor. In re Kornblum & Co., Inc., 81 F.3d at 287; see also Six L's Packing Co. v. West Des Moines State Bank, 967 F.2d 256, (8th Cir. 1992) ("[T]he burden is on the PACA debtor . . . to show that the disputed [asset] is from a non-trust source.").

The PACA requires produce suppliers to provide notice to the buyer of their intent to preserve trust benefits. Produce suppliers can preserve their trust benefits in one of two ways. First, a produce supplier licensed by the United States Department of Agriculture may include the requisite trust language on its invoices or other billing statements sent to the produce purchaser at or near the time of delivery. 7 U.S.C. § 499e(c)(4). Second, a produce supplier may send a Notice of

8

**Intent to Preserve PACA Trust Rights within thirty days from the date payment is due. 7 U.S.C. § 499e(c)(3); 7 C.F.R. § 46.46(f)(2).**

**Failure to maintain the trust and make full payment promptly to the trust beneficiary is unlawful. 7 U.S.C. § 499b(4). Furthermore, agricultural merchants and dealers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(d)(1). "Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of [7 U.S.C. § 499b]." Id. A merchant or dealer that violates the provisions of Section 499b is liable to the person injured for the full amount of damages sustained as a consequence. 7 U.S.C. § 499e(a).**

**Based upon the undisputed facts of this case, there is no genuine dispute that the Plaintiffs each had a contractual relationship with Watermelon Express, and that Watermelon Express received and accepted all of the produce in question indicated on the Plaintiffs' invoices. Similarly, there is no genuine dispute that the Plaintiffs preserved their interest under the trust provisions of the PACA by sending invoices to the Defendants which contained the language required by 7 U.S.C. § 499e(c)(4). There is no genuine dispute that, at all times pertinent to this case, Watermelon Express was a dealer licensed under the PACA and therefore subject to its provisions. Nevertheless, despite accepting the produce delivered by the Plaintiffs, Watermelon Express failed to pay for it as required, thereby violating 7 U.S.C. § 499b(4). Accordingly, the Court holds that the Plaintiffs are entitled to summary judgment as a matter of law against Watermelon Express.**

## 2. Liability of Individual Defendants

An individual who is in a position to oversee the proper application of the PACA trust assets, and who does not preserve the trust assets for the PACA trust beneficiaries, for whatever reason, has breached a fiduciary duty and is personally liable for that tortious act. See Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 705-06 (2d Cir. 2007) (holding sole director and shareholder liable because he was in a position to control PACA trust assets); Bronia, Inc. v. Ho., 873 F. Supp. 854, 861 (S.D.N.Y. 1995) (holding the "primary actor responsible for [the corporation's] failure to live up to its fiduciary responsibilities under PACA" personally responsible for the corporation's breach of trust); Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 348 (S.D.N.Y. 1993) ("An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act"); Mid-Valley Produce Corp. v. 4-XXX Produce Corp., 819 F. Supp. 209, 212 (E.D.N.Y. 1993) ("[A]n officer who causes a corporate trustee to commit a breach of trust which causes a loss to the trust is personally liable to beneficiaries for that loss").

Failure to turn over the trust assets when payment is due to the produce suppliers breaches the fiduciary duty to make the trust assets "freely available" to the PACA trust beneficiary. See Morris Okun, Inc., 814 F. Supp. at 348 ("[A] PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier."); Reds Market v. Cape Canaveral Cruise Line, Inc., 181

10

F. Supp. 2d 1339, 1344 (M.D. Fla. 2002) (stating that a simple finding that individual defendants who were in total control of PACA trust assets failed to account for those assets is sufficient to impose personal liability under PACA).

Courts have repeatedly held that persons, such as Kathleen and Charles Annicelli, who are in "position[s] of control" over the PACA trust assets are personally liable for the breach of the PACA trust regardless of whether they personally dissipated the assets. Coosemans Specialties, 485 F.3d at 705-06; Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc., 217 F.3d 348, 351 (5th Cir. 2000); Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997); Morris Okun, Inc., 814 F. Supp. at 348. This holding is based upon the trust law principle that "a corporation can act only through its agents and can thus fulfill fiduciary obligations only through its agents," Morris Okun, 814 F. Supp. at 349, and is intended to ensure the enforcement of Congress' goals in establishing the PACA statutory trust. Reds Market, 181 F. Supp. 2d at 1343. As one court has explained, "[i]f liability were limited to corporate dealers, the intent of the federal statute to protect consumers and sellers of produce would be easily frustrated." Id.

Kathleen Annicelli has admitted that she was a "member and principal of Watermelon Express, or a person in a position to control Watermelon Express, at all times relevant to this action." Def. A&J's 56(a)(1) Statement ¶ 6. Records of the State of Connecticut indicate that she is the principal of Watermelon Express, and she is listed on the PACA license for Watermelon Express. In addition, Watermelon Express' banking records show that Kathleen Annicelli was in a position to control the assets of Watermelon Express, and that she actually exercised control over

such assets. Kathleen Annicelli is a signatory on Watermelon Express' bank accounts, and she signed numerous checks on these bank accounts during the time period relevant to this case.

Similarly, Watermelon Express' banking records also show that Charles Annicelli was in position of control over the company's PACA trust assets, and that he actually exercised such control. Charles Annicelli had check writing authority on Watermelon Express' bank accounts, and he wrote checks on those accounts to a number of parties. In addition, he is the sole signatory on Watermelon Express' accounts at Suntrust Bank. Finally, Thomas Tramulota, Secretary/Treasurer of A&J, has known and dealt with Charles Annicelli as the owner of Watermelon Express since 2006.

Based upon these facts, the Court holds that Kathleen and Charles Annicelli were in positions of control over the trust assets of Watermelon Express at all times relevant to this case. Their failure to preserve the trust assets for the Plaintiffs constitutes a breach of their fiduciary duties for which they are personally liable. Accordingly, the Plaintiffs are entitled to summary judgment as a matter of law against Kathleen and Charles Annicelli.

### 3. Damages, Interest, and Attorneys' Fees

Because there is no genuine issue of material fact in dispute, both Plaintiffs' motions for summary judgment are granted. Watermelon Express must pay the principal amount due of $81,880.50 to A&J, and must pay the principal amount due of $131,585.75 to VegPro. Any amount which is not recoverable from Watermelon Express must be paid by Kathleen and Charles Annicelli, personally. See Morris

**Okun**, 814 F. Supp. at 349-50 (corporation is liable for PACA debt in the first instance, and corporate fiduciaries are secondarily liable for whatever shortfall may exist). The Plaintiffs are also entitled attorneys' fees and prejudgment interest as "sums owing in connection" with the subject produce sales at issue in this case. **Coosemans Specialties, Inc.**, 485 F.3d at 709; see also **E. Armata, Inc. v. Platinum Funding**, 887 F. Supp. 590, 594-95 (S.D.N.Y. 1995) (although a third party lender was not a party to a contract providing for the payment of attorneys' fees in the event a collection action was necessary, it is liable to the PACA trust beneficiary because the fees incurred to collect the past due amounts constitute "sums owing in connection with such transactions").

A&J has indicated that it used different invoice forms over the course of its sales to the Defendants. Certain invoices in the total amount of $30,026.00 do not include a provision for interest. A&J is entitled to prejudgment interest at the statutory rate set forth in 28 U.S.C. § 1961 on this amount, running from the date of payment default. See **E. Armata, Inc.**, 887 F. Supp. at 595 (courts have discretion to award prejudgment interest under the PACA based on congressional intent to protect agricultural sellers). Other A&J invoices in the total amount of $51,854.50 include a provision for interest at a rate of 16% per annum. The invoices that VegPro issued to the Defendants did not provide for a specific rate of interest, and therefore VegPro is entitled to prejudgment interest pursuant to 28 U.S.C. § 1961 on the principal amount due to it, running from the date of payment default. The Plaintiffs are each directed to file a motion with accompanying affidavits in support of interest, attorneys' fees, and costs within 21 days of the date of this decision.

## III. CONCLUSION

Based upon the above reasoning, the Plaintiffs' motions for summary judgment [Doc. ##97, 101] are GRANTED. The Clerk is directed to enter judgment for A&J in the amount of $81,880.50 plus interest, reasonable attorneys' fees, and costs, and for VegPro in the amount of $131,585.75 plus interest, reasonable attorneys' fees, and costs, and to close this case. The Plaintiffs are each directed to file a motion with accompanying affidavits in support of interest, attorneys' fees, and costs within 21 days of the date of this decision.

IT IS SO ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: December 23, 2010.